Eric C. Rassbach – No. 288041
erassbach@becketlaw.org
Mark L. Rienzi – *pro hac vice* to be filed
Lori H. Windham – *pro hac vice* to be filed
Chris Pagliarella – *pro hac vice* to be filed
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| OBRIA GROUP, INC., a California non-profit corporation; and OBRIA MEDICAL CLINICS OF SOUTHERN CALIFORNIA, a California non-profit corporation, <br><br> *Plaintiffs,* <br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR, in his official capacity as Secretary of the U.S. Department of Health and Human Services; and ROGER SEVERINO, in his official capacity as Director of the Office for Civil Rights of the U.S. Department of Health and Human Services; <br><br> *Defendants.* | **No. 8:19-cv-905** <br><br> **COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF** |

# INTRODUCTION

1. For decades, federal law has recognized the fundamental principle that no matter what the prevailing political view, no person or entity should ever face discrimination based on sincere religious opposition to abortion. In particular, federal law prohibits discrimination against health care providers, in funding or otherwise, based on their or their employees' unwillingness to participate in abortion or referral for abortion.

2. Yet federal regulations tell a different story. Title X regulations post-dating these laws purport to require every Title X grantee to not only provide information about abortion, but to make actual referrals for abortion. The Department of Health and Human Services (HHS) has never explained how these regulations could be consistent with federal law, and in 2008, actually declared the regulations unenforceable in light of federal law.

3. Earlier this year, HHS finally repealed this regulation in an omnibus final rule. Plaintiff Obria Group, Inc., a health care nonprofit serving high-risk populations that is operated pursuant to Christian religious beliefs, applied for a family planning grant that they intended to use once the abortion-referral requirement was lifted. Obria intended to begin using the

granted funds on May 3, when the repeal of the regulation was set to become effective. Those funds were set to be distributed to subgrantee clinics in Obria's network, including Obria Medical Clinics of Southern California (Obria SoCal), another nonprofit.

4. The grant would have enabled Obria to expand its services to an additional 4,000 patients annually, services which would include sexually transmitted infections and reproductive health screenings, fertility-awareness based methods of family planning, basic infertility services, pregnancy tests and prenatal care, and sexual health and relationship counseling for youth and adults. It would have also enabled Obria to provide services to all patients living below the federal poverty line entirely free of charge. Without the grant, Obria cannot serve these patients, including those facing significant and immediate health risks.

5. The omnibus final rule was recently enjoined by various district courts, primarily in connection with restrictions that final rule would place on Title X projects. Following those injunctions, HHS informed Obria that it intended to operate Title X funding "under the [prior] regulations." The prior regulations include the prior version of 42 C.F.R. § 59.5(a)(5), requiring abortion referral.

6. Obria and its clinics are now put to a Hobson's choice. They may either accept the money—which would mean accepting the abortion referral requirement to which they have deep religious objections—or they can decline to do so, meaning that the funds will be forfeited and Obria clinics will be unable to provide much-needed healthcare to needy women across California.

7. Due to the nature of family planning, Obria and Obria SoCal may *never* be able to assist those California women currently facing family planning challenges if it cannot access funds to assist them now, *before* an unintended pregnancy. Likewise, Obria and Obria SoCal will be unable to provide crucial sexual risk counseling and testing for serious infections—including HIV and cervical human papillomavirus—leading to increased health dangers in the vulnerable populations they serve.

8. Obria, Obria SoCal, and their low-income patients, cannot wait for contentious litigation over every facet of the Title X program to end years from now before finding out if Obria can access grant money without violating its faith. To the contrary, the funds for the 2019 fiscal year will be forfeited long before then. Obria therefore submits this complaint for declaratory and injunctive relief.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the Constitution or laws of the United States) and 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiff). This Court has jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 2000b-1(c).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), as the plaintiffs reside in this district. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this district, as Obria would be harmed by the application of the challenged regulation in this district by being forced to choose between violating its religious beliefs and surrendering a duly-awarded grant to serve its low-income patients in this district.

## INTRADISTRICT ASSIGNMENT

11. Pursuant to General Order No. 19-03 at I.B.1.a.(1)(b), this case should be preliminarily assigned to the Southern Division because all plaintiffs reside in the Southern Division and the United States is a defendant.

# PARTIES

12. Plaintiff Obria is a California nonprofit corporation based in Tustin, Orange County, California. Obria provides high-quality family planning services to women, men, and youth at risk for poor sexual and reproductive health outcomes. Obria provides these services through a network of comprehensive Obria medical clinics designed to improve health outcomes and break cycles of poverty. Obria's network of clinics employs physicians, nurses, and other medical professionals to provide healthcare to their patients.

13. Plaintiff Obria SoCal is a California nonprofit corporation based in Orange County, California with multiple clinic sites in Southern California. Obria SoCal is a health care provider and clinic affiliated with Obria, and implements Obria's mission of high quality health care services for low-income patients. Obria SoCal employs physicians, nurses, and other medical professionals to provide healthcare to its patients.

14. Both Obria and Obria SoCal are operated pursuant to and consistent with their Christian religious beliefs concerning the inviolable dignity of every person, particularly those often treated without regard in society, such as the poor, the sick, and the unborn. Obria and Obria SoCal have

sincere religious beliefs that it would be immoral and sinful for them to assist in ending an unborn life, including by referral for abortion.

15. Defendants are appointed officials of the United States government and United States governmental agencies responsible for issuing and enforcing the challenged regulations.

16. Defendant United States Department of Health and Human Services is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the challenged regulations.

17. Defendant Alex M. Azar is the Secretary of HHS. In this capacity, he has responsibility for the operation and management of HHS. Secretary Azar is sued in his official capacity only.

18. Defendant Roger Severino is the Director of the Office for Civil Rights at HHS. In this capacity, he has responsibility for enforcing federal civil rights laws protecting the rights of conscience and the free exercise of religion and prohibiting coercion and religious discrimination in health and human services. Mr. Severino is sued in his official capacity only.

Complaint for Declaratory, Injunctive, and Other Relief (No. 8:19-cv-905)

# BACKGROUND

*History of Obria*

19. Obria oversees a nationwide network of nonprofit comprehensive medical clinics designed to both improve health outcomes and break cycles of poverty for high-risk populations. Obria SoCal is part of that network.

20. Through its clinic network, Obria provides high quality family planning services to women, men, and youth at risk for poor sexual and reproductive health outcomes. Obria's network, including Obria SoCal, employs physicians, nurses, and other medical professionals to provide healthcare services to its patients.

21. Obria clinics by and large serve low-income communities; in 2017, for example, Obria clinics in California served 7,338 patients with incomes below 200% of the federal poverty line. Of those 7,388, 81% had incomes below 100% of the federal poverty line. In Orange alone, Obria and Obria SoCal served 2,355 patients with incomes below 200% of the federal poverty line. Of those 2,355, 86% had incomes below 100% of the federal poverty line.

22. Most of Obria's patients belong to demographics facing statistically higher risk to their reproductive health; 77% of all of Obria's patients are

8

female, 41% were between the ages of 15 to 24, and at least 56% identify as members of minority groups.

23. In light of the desperate need for its services, Obria's policy is to provide essential sexual and reproductive health services regardless of the patient's ability to pay, such that many services are provided at no charge or a discount depending on patient income and family size. Furthermore, some low-cost services—for example, prenatal vitamins—are provided free of charge without regard to ability to pay.

24. Obria clinics pride themselves on their holistic approach to patient support, treating physical symptoms while also addressing social and mental impediments to well-being, particularly among the vulnerable youth populations that make up nearly half of their total clients in California.

25. Accordingly, Obria clinics, including Obria SoCal, provide a wide variety of services to their patients, though the exact scope of services varies by location.

26. Obria clinics provide reproductive health screenings for various sexually transmitted diseases, including chlamydia, gonorrhea, syphilis, HIV, and cervical human papillomavirus. All screenings are conducted in accord with Centers for Disease Control and Prevention guidelines. Obria

9

1    clinics also provide pelvic exams, blood pressure screenings, Pap tests,

2    breast examinations to screen for signs of breast cancer, and where

3    indicated, referrals for mammograms.

4    27. Obria clinics provide counseling to teenagers on avoiding sexual

5    coercion and sexual risk. Obria's counseling has been approved by, and

6    operates under, a Title V Sexual Risk Avoidance Education grant from HHS.

7    28. Obria clinics provide pregnancy testing, counseling, and prenatal care.

8    For the most recent years of data available for each service, Obria clinics

9    provided approximately 4,200 pregnancy tests (in 2018) and 900 prenatal

10   visits (in 2017). All prenatal care is provided according to American College

11   of Obstetricians and Gynecologists guidelines.

12   29. Obria clinics provide birth control education sessions, run exclusively

13   by licensed health care professionals or providers, that address the

14   effectiveness, possible side effects, and complications of all contraceptives,

15   as well as the benefits—especially for adolescents—of choosing to avoid

16   sexual activity for a defined period of time. In 2018, Obria provided more

17   than 6,000 birth control education sessions for women, men, and

18   adolescents. Obria clinics have also begun, outside California, to provide

fertility awareness services to interested patients to assist them with family planning.

30. Obria provides limited obstetric ultrasound exams, prescribed in accordance with American Institute of Ultrasound in Medicine, American College of Obstetricians and Gynecologists, and American College of Radiology guidelines. In 2018, Obria provided approximately 3,000 such ultrasound exams.

31. Though Obria clinics provide a diverse array of services to patients in a variety of circumstances, both inside and outside the context of pregnancy, they cannot provide or facilitate the service of abortion, consistent with their religious beliefs that abortion is the taking of a human life.

32. Obria and Obria SoCal both view their service as a form of Christian ministry which must conform to the tenets of that faith in its treatment of the vulnerable. They believe that Christianity necessitates a belief that unborn human life is endowed with a soul and God-given dignity, and that to refer for or otherwise facilitate an abortion is gravely sinful.

33. Accordingly, Obria and Obria SoCal cannot accept funding conditioned on a requirement to provide referrals for abortion.

11

1    *Pre-2019 Legal Background*

2    34. In 2000, HHS repealed a longstanding regulation that generally

3    prohibited Title X recipients from providing any counseling on abortion or

4    referrals for same. In reversing this policy, it instead provided that Title X

5    recipients *must* provide both counseling on, and referrals for, abortion. 65

6    Fed. Reg. 41270, 41272 (July 3, 2000) ("2000 Final Rule"); *see* 42 C.F.R.

7    § 59.5(a)(5) (2000) ("Section 59.5(a)(5)") (resulting regulation).

8    35. At the time of this regulation, federal law had provided—and still

9    provides—that Title X grantees could not require individual employees to

10   assist in any program activity "contrary to his religious beliefs or moral

11   convictions" and specifically provides that no Title X grantee could

12   discriminate against an employee for such beliefs regarding abortion. 42

13   U.S.C. § 300a-7(c)-(d).

14   36. The 2000 Final Rule acknowledged this restriction prevented any

15   mandate on individual employee behavior, but stated that nevertheless,

16   "the grantees must make other arrangements to ensure that the service [of

17   abortion counseling and referral] is available to Title X clients who desire

18   it." 65 Fed. Reg. at 41274-75.

37. The 2000 Final Rule did not explain how a requirement to "make other arrangements" could be lawfully applied to a health care provider whose entire staff objects to referrals for abortion or where the entity itself objects to making such arrangements.

38. At the time of the 2000 Final Rule, federal law also prohibited—and still prohibits—the federal government from "subject[ing] any health care entity to discrimination on the basis that—(1) the entity refuses . . . to provide referrals for . . . [induced] abortions." 42 U.S.C. § 238n(a).

39. The 2000 Final Rule made no mention of this restriction or how it might affect the new Section 59.5(a)(5) mandate to refer for abortion.

40. At the time of the 2000 Final Rule, the Religious Freedom Restoration Act (RFRA) also prohibited—and still prohibits—government from "substantially burden[ing] a person's exercise of religion" unless "application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb-1(b).

41. The 2000 Final Rule made no mention of the rights of Title X grantees under RFRA, or under the Free Exercise Clause of the First Amendment to the United States Constitution.

13

42. The 2000 Final Rule also did not explain why Section 59.5(a)(5)'s mandate to refer for abortions constituted a permissible compulsion on speech under the Free Speech Clause of the First Amendment, or otherwise discuss the Free Speech Clause.

43. Beginning in 2004, and continuing to the present, consolidated appropriations bills for the federal government have included a rider colloquially referred to as the "Weldon Amendment." The Weldon Amendment bars any funding to an agency that "subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions." Public Law 115-141, 132 Stat. 348, 763-64 (Mar. 23, 2018) (2018 Appropriations Bill) (also barring the expenditure of public funds on abortion); *see* Public Law 115-31, 131 Stat. 135, 562 (May 5, 2017) (2017 Appropriations Bill).

44. In 2008, HHS issued a new final rule to reinforce conscience protections for health care providers. 73 Fed. Reg. 78072 (Dec. 19, 2008) (2008 Final Rule). With regard to the referral requirement, HHS specifically acknowledged that (1) the referral requirement was "inconsistent with the health care provider conscience protection statutory provisions and this

regulation," and that (2) pending any repeal, "the Department cannot and does not enforce 42 CFR 59.5(a)(5) [the referral requirement] against an otherwise eligible grantee or applicant who objects to the requirement to counsel on or refer for, abortion." 73 Fed. Reg. at 78087-88.

45. While the remarks accompanying the 2008 Final Rule were later disclaimed as guidance in a 2011 rulemaking, the rule that withdrew those remarks indicated that pro-life medical providers "will still have the same statutory protections afforded to them as have been for decades." 76 Fed. Reg. 9968, 9974 (Feb. 23, 2011) (2011 Final Rule). The 2011 Final Rule neither disclaimed the right to enforce the referral requirement nor explained its consistency with federal conscience law.

*Background on Obria Grant*

46. On June 1, 2018, HHS published a proposed rule revising various Title X regulations. 83 Fed. Reg. 25502 (June 1, 2018). Among other things, it proposed eliminating the requirement of referrals for abortion, finding a requirement to provide information, counseling, and referrals for abortion to be "inconsistent with the conscience protections" of multiple governing statutes, as well as other restrictions on Title X. 83 Fed. Reg. at 25506.

47. Following HHS's publication of its proposed rule, Obria began making plans to increase its services to women as a Title X grantee. Obria then applied for a Title X grant so that, when the rule was finalized, it would not be required to wait another year to expand its services to the many low-income women needing help in Orange County.

48. On March 4, 2019, HHS issued a Final Rule based on its proposed rule, designed to "ensure compliance with . . . the statutory requirement that none of the funds appropriated for Title X may be used in programs where abortion is a method of family planning." 84 Fed. Reg. 7714, 7715 (Mar. 4, 2019) (2019 Final Rule).

49. While the 2019 Final Rule placed a number of new conditions on Title X providers, it eliminated the requirement for Title X grantees to refer for abortion, stating that the 2008 Final Rule correctly identified that the requirement directly "conflict[e]d with HHS enforced statutes protecting conscience in health care." 84 Fed. Reg. at 7716.

50. On March 26, 2019, Obria was approved for a grant of just over $5 million over three years, with $1.7 million available in the first year. However, the year's funds will eventually be forfeited if Obria cannot show prompt and effective use of the funds.

51. By its terms, the grant also stipulates that acceptance of the funds indicates a stipulation that all activities under the award "are subject to all provisions of 42 CFR Part 59, Subpart A currently in effect or implemented during the period of the grant." Prior to the 2019 Final Rule, those regulations included the version of Section 59.5(a)(5) that requires referral for abortion.

52. In April 2019, subsequent to the grant, three federal district courts issued injunctions applicable in California enjoining any implementation of the 2019 Final Rule, in significant part due to legal arguments about the validity of the new restrictions on Title X providers. *See* Dkt. 54, *Washington v. Azar*, No. 1:19-cv-03040 (Apr. 25, 2019) (nationwide); Dkt. 103, *California v. Azar*, No. 3:19-cv-01184 (Apr. 26, 2019) (statewide); Dkt. 142, *Oregon v. Azar*, No. 6:19-cv-00317 (Apr. 29, 2019) (nationwide).

53. On April 29, 2019, HHS sent an email to Obria "writing to clarify that *none* of the compliance changes . . . will go into effect unless and until all applicable injunctions are lifted" and that "the Title X program will continue to operate under the regulations" previously applicable, with HHS "not tak[ing] any steps to enforce the new rule." (Emphasis added.)

---

54. Under these circumstances, acceptance of HHS funds at this time would mean binding Obria to compliance with the prior regulations applicable to Title X grantees, including the requirement to refer for abortion.

55. Application of Section 59.5(a)(5)'s requirement to refer for abortion violates Obria and Obria SoCal's free exercise rights under RFRA and the First Amendment, particularly given the mandate's direct contradiction with existing statutes.

56. Further, Section 59.5(a)(5)'s mandate is an unconstitutional condition under the First Amendment's Free Speech Clause, as it compels speech to which the speaker objects outside of the project funded by Title X.

57. Absent an injunction of Section 59.5(a)(5), Obria and its subgrantees, including Obria SoCal, will be unable to meet the immediate needs of the at-risk community it serves, including the time-sensitive needs of those who need family planning assistance now (and for obvious reasons, may not be able to be served on a delay), and the daily dangers faced by adolescent women who will likely be seriously harmed if made to wait months or longer for effective sexual education counseling and sexually transmitted infection

screenings. Absent an injunction, Obria cannot serve these needs without violating its sincere faith.

58. Obria and Obria SoCal are further entitled to nominal damages in light of the ongoing violation of their civil and constitutional rights as protected by law.

## FIRST CAUSE OF ACTION

## (Violation of Religious Freedom Restoration Act)

59. Paragraphs 1 through 58 are realleged and incorporated herein by reference.

60. Obria and Obria SoCal's sincerely held religious beliefs prohibit them from referring for abortion. Obria and Obria SoCal's compliance with these beliefs is a religious exercise.

61. Section 59.5(a)(5)'s mandate to refer for abortion requires Obria and Obria SoCal to choose between their religious exercise and being eligible to access its Title X grant, or to access any further grants.

62. These funds are crucial to Obria and Obria SoCal's work serving high-risk populations in immediate need of medical intervention and counseling.

63. Section 59.5(a)(5) thus creates government-imposed coercive pressure on Obria and Obria SoCal to change or suppress their religious beliefs.

19

64. Section 59.5(a)(5) chills Obria and Obria So Cal's religious exercise.

65. Section 59.5(a)(5) exposes Obria and Obria SoCal to the loss of substantial government funding as a result of their religious exercise.

66. Section 59.5(a)(5) is not justified by a compelling government interest.

67. Applying Section 59.5(a)(5)'s mandate to refer for abortions to Obria and Obria SoCal furthers no compelling government interest.

68. Section 59.5(a)(5)'s mandate is not the least restrictive means of furthering the government's interests.

69. Section 59.5(a)(5) and its threatened enforcement violates Obria and Obria SoCal's rights secured to them by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*

70. Absent injunctive and declaratory relief against Section 59.5(a)(5)'s mandate to refer for abortion, Obria and Obria SoCal have been and will continue to be harmed.

71. Obria and Obria SoCal are likewise entitled to nominal damages for the infringement of their rights under law.

## SECOND CAUSE OF ACTION

## (Violation of First Amendment – Free Exercise Clause)

72. Paragraphs 1 through 58 are realleged and incorporated herein by reference.

73. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

74. The reinstituted version of Section 59.5(a)(5) imposes substantial burdens on Obria and Obria SoCal by requiring them to choose between federal funding for their vital services for women, men, and adolescents in need, and their exercise of religion.

75. Section 59.5(a)(5)'s abortion referral requirement, in the exceptions it permits and denies, is neither neutral nor generally applicable.

76. The government has no compelling interest in imposing a burden on Obria's and Obria SoCal's exercise of religion.

77. Conditioning access to Title X funds on an agreement to make abortion referrals furthers no governmental interest, particularly when federal law actually prohibits such conditions, federal law further prohibits any expenditure of federal funds on abortion with few exceptions, and it has

exempted every individual in a Title X project from having to provide referrals to which he or she objects for any reason, religious or moral.

78. Section 59.5(a)(5) is not the least restrictive means of furthering the government's interests.

79. Section 59.5(a)(5) and its threatened enforcement violates Plaintiffs' rights secured to them by the Free Exercise Clause.

80. Absent injunctive and declaratory relief against Section 59.5(a)(5), Plaintiffs have been and will continue to be harmed.

81. Obria and Obria SoCal are likewise entitled to nominal damages for the infringement of their rights under law.

## THIRD CAUSE OF ACTION

## (Violation of First Amendment –

## Free Speech Clause – Compelled Speech)

82. Paragraphs 1 through 58 are realleged and incorporated herein by reference.

83. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

84. Section 59.5(a)(5) compels Obria and Obria SoCal to utter speech against their wills, in particular by "requiring [Plaintiffs] to inform women

22

1  how they can obtain state-subsidized abortion." *Nat'l Inst. of Family & Life*

2  *Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (*NIFLA*).

3     85. Section 59.5(a)(5) and its threatened enforcement violate Plaintiffs'

4  rights secured to them by the Free Speech Clause.

5     86. Absent injunctive and declaratory relief against the 2000 Rules,

6  Plaintiffs have been and will continue to be harmed.

7     87. Obria and Obria SoCal are likewise entitled to nominal damages for

8  the infringement of their rights under law.

9              **PRAYER FOR RELIEF**

10    WHEREFORE, Plaintiffs respectfully request that this Court:

11     1. Issue a declaratory judgment that Section 59.5(a)(5), as adopted in the

12  2000 Rules, violates RFRA;

13     2. Issue a declaratory judgment that Section 59.5(a)(5), as adopted in the

14  2000 Rules, violates the Free Exercise Clause;

15     3. Issue a declaratory judgment that Section 59.5(a)(5), as adopted in the

16  2000 Rules, violates the Free Speech Clause;

17     4. Issue a preliminary injunction barring the enforcement of Section

18  59.5(a)(5), as adopted in the 2000 Rules, and any reimposed mandate;

5. Issue a permanent injunction barring the enforcement of Section 59.5(a)(5), as adopted in the 2000 Rules, and any reimposed mandate;

6. Award nominal damages;

7. Award the Plaintiffs costs, expenses, and reasonable attorneys' fees; and,

8. Award such other relief as the Court deems just and proper.

Complaint for Declaratory, Injunctive, and Other Relief (No. 8:19-cv-905)

Dated: May 14, 2019                    Respectfully submitted,


                                       /s/ Eric C. Rassbach
                                       Eric C. Rassbach – No. 288041
                                       erassbach@becketlaw.org
                                       Mark L. Rienzi – *pro hac vice* to be filed
                                       Lori H. Windham – *pro hac vice* to be filed
                                       Chris Pagliarella – *pro hac vice* to be filed

                                       The Becket Fund for Religious Liberty
                                       1200 New Hampshire Ave. NW
                                       Suite 700
                                       Washington, DC 20036
                                       Telephone: (202) 955-0095
                                       Facsimile: (202) 955-0090


                                       *Counsel for Plaintiffs*

Complaint for Declaratory, Injunctive, and Other Relief (No. 8:19-cv-905)